Pjsaksojí, C. J.
We-eoncur with Mr. Eaton in the position, that from the manner in which the ease was put to the'jury, the motion for a venare de novo is to be considered on the testimony of the witnesses for the prisoner only ; and that the testimony of his principal witness, Harriet, is to be taken in the view most favorable to him. This follows from the fact, that the Judge made a general charge, and did not “declare and explain the law arising on the evidence.” State vs. Summey at this term, Gaither vs. Feribee, 1 Winston, 315, State vs. Norton, Id., 305.
We have these facts : The prisoner and one Micajah, in a star-light night and in the shade of trees, had a fight. Micajah got the prisoner down, and then ran off. The _ prisoner rose up, and had his hand to his side,-as if he was holding something in his hand ; he then sat down on the door sill, on which the deceased was sitting. Words passed between them — the prisoner got up — tbe deceased-' then rose up and reached his ha'nd inside the door and got a stick. As he was turning round (after getting the •stick,) the prisoner stabbed him.in the leftside with-a bbwie knife, the blade of which was- nine inches long. The deceased then knocked him down with the stick ; as he rose, he knocked him down a second and a third time ; prisoner ran off, the deceased followed him a few steps, and fell, and died of the wound. The bowie knife and stick were admitted to be .deadly weapons.
The. learned counsel insisted that the offence was manslaughter, on two grounds. The aet of seizing the stick, with an intent instantly to strike, was an assault witE a deaply weapon, and amounted. to legal provocation. *65 2. Tbe prisoner bad reasonable ground to believe that tbe deceased was about to do bim great bodily barm, and struck to prevent it, wbicb mitigates tbe offence to- manslaughter.
Conceding these principles of law, the Court is of opinion that neither' applies .to this case, and that the offence is murder. There is some confusion in respect to the*ap-< plication of these principles of the law of homicide,' growing out of obiter dicta and certain decisions to be met with in the books. It is important that all confusion' should be cleared away, especially in times like these.; for one of the ill effects of war is to scatter deadly weapons among’. the people, familiarize the, public mind to scenes of.blood, and make a resort to such weapons a thing of frequent, occurrence, unless it is prevented by the fear of the law. On this account, without attempting to review the cases, (which would be an endless task) I will endeavor to give the reasons ' oh whioh the law is based ; whereby the proper applications, of its principles will be made, clear.
Manslaughter is of two kinds : 1st. When the killing is, the heat of blood.- 2d. When the killing is by accident, or mistake, arising from negligence, or a want of due precaution.
1. If A is about to strike. B, who is unwilling to enter into a fight, and shows it by words or actions, or otherwise, as by going back, or warns A not to strike, and -A presses on and strikes, or attempts to strike, and thereupon B kills with a deadly'weapon;, it is manslaughter; for there is a legal, pro vocation, and the law ascribes the killing to “heat »f blood,” and not to malice.
2. If, on a sudden quarrel, the parties begin a fight by consent, without deadly weapons, and; after blows pass, one uses a deadly weapan and kills, it is manslaughter; *66 for, by tbe excitement of the fight, the Mood ia heated, and the killing is done, not of malice, but in the “furor brevis,” which the law, out of indulgence to human frailty, allows to mitigate the offence, although the party had himself committed a breach of the peace by entering .into the fight willingly.
S. If, on a sudden quarrel, the parties fight by consent, at the instant, with deadly weapons, and oneis kiLed, it is but manslaughter, provided the parties fight on equal terms, and no undue advantage is taken; for the fairness of the fight rebuts the implication of malice, and the law mitigates the offence out of indulgence to the frailty of human nature.
Which of these thr. e principles is applicable to our ease? When it is proved that one has killed intentionally, with a deadly weapon, the burthen of showing justification, excuse or mitigation, is on him. It is admitted the prisoner killed intentionally, with a deadly weapon. He does not show, by his words or actions, that he declined the fight, or gave back, or warned the deceased not to strike* So the first principle does not apply. The parties did not begin the fight without deadly weapons. So the second principle does not apply. The parties fought, by consent, with deadly weapons ; so the case falls under the third principle, and the question is narrowed to this Does the principle in regard to a fair fight apply? or does the case fall under the* exception in regard to a fight on unequal terms, and when undue advantage is taken? This is too-Main for discussion. The prisoner, having his weapon ready, took his adversary at a disacU vantage, and stabbed him in the side while he. was in the act of turning round to face him, and before he was “ on his defence.” This dastardly act excludes the idea that *67 bo entercd'into tbe figbt .in compliance with the common notions of honor, and shows that he !£ sought the blood ” of the deceased.
The principle by which a killing in a fair light, with deadly weapons, is mitigated, was adopted at a time when every gentleman wore a sword ; and the custom was, oa offence given, to draw and fight, finch fights, owing to the expertness of the combatants in defence, were not often fatal. Mannershavo since changed. No one in private life now wears a- sword and how' far this may affect the principle - is a serious question ; but it is certain that a fair fight at the instant with deadly weapons, is now of rare occurrence. When one has a knife,' and the other a stick or a pistol, they-are ne^on equal terms-; and the purpose of each is to take advantage and give a mortal Wow, as soon as possible. Hu oh caseg fall under the exception ; the party killing is a murderer, and there is nothing to mitigate.
If, as contended by Mr. Eaton, in. a l! mutual combat” with deadly weapons, tbe offer to strike amounts to a legal-provocation, neither party would ever be guilty of more than manslaughter.;- for eacb could «ay, £i my ad-rsrsarj was about to strike with a deadly weapon !” go it would make no difference whether the fight was declined or entered into willingly, or was fair, or unfair— and the law would encourage a hasty resort to deadly weapons, and an unfair use of them, by -saying <c You* need not show that you declined the fight, and attempted to avoid it”; you need not show that you Uok no undue-advantage — use your weapon as soon as you can, and take all advantages ! for if yeur adversary is about to strike, it is a legal provocation, although you are also about to strike, and whichever kills will only be guilty of *68 manslaughter." This would only "lead to bortid consequences, and completely upset and confound all the prm-ciples which have been so carefully adopted to deter men from the use of deadly weapons, and at the same time extend a reasonable indulgence to the frailty of .human nature.
The tear tied, eounsel did not insist with much earnestness, that the case could be brought under the second kind .of manslaughter. One or two instances will show that the doctrine has no application. • If one. handles a loaded gun so negligently that it goes off and kills, it will be excusable homicide or manslaughter, according to tlve degree ofnegligence. ,
2. An officer pushed abruptly and violently into a gentleman’s chamber early in the morning, to arrest him, not telling hi'r business'er using words of arrest. The gentleman, not hnowing that he was an officer, under the first impulse stabbed him with his sword. It was ruled manslaughter at common law, for tire prisoner, not knowing the officer's business, might, from his behavior, reasonably conclude that he was about t« rob or murder him! Cook’s case, Cro. Car., 538.
8. Upon an outcry of thieves, in filie night time, a person, who was concealed in a .closet, but no thief, in the hurry and surprise the family was under, was stabbed in the dark. This was holden to be an innocent mistake, and ruled chance medly. Levet’s case cited in Cook's •case supra. Foster, at page 291), observes ef this ease : “ Possibly, it might have been better ruled manslaughter, due circumspection not having been used." In all cases, when the offence is mitigated because the party acted under a mistake, for which there was reasonable ground, if the danger hall been real, the act would have been justi- *69 fable. In our caso the danger was real — the deceased was about to strike with a deadly weapon; and, if this doctrine applies, the killing was justifiable, and the prisoner ought to have been acquitted !. ! Redmtio ad absur-dum. ■ -
The second objection to the charge is not tenable. From the view we have felt bound to take of the case, the Judge is considered as having, in effect, instructed the jury that, putting the testimony of the witnesses on the part of the State out, 'of the eaSe, us' an intentional killing with a deadly weapon was admitted, the testimony of the prisoner's witnesses did not mitigate the offence to manslaughter ; and the prisoner has no reason to complain* because the instruction assumes that what his. own witnesses swore to was true. •
, The third objection is not tenable, The position “that the principle on which, the doctrine of reasonable doubt is" grounded, is as much .applicable to the grade of the homicide, as it is to the fact of the homicide,” is not true. .The , error consists in not attending to the distinction that the fact of the homicide must he proved by the State; but if found or admitted, the onus.of showing justification, ex- . cuse or mitigation, is'upon the prisoner. At page 290 Foster says : “ whoever would shelter himsélf under the plea of provocation, must prove his case to the satisfaction of the jury;” the presumption of law.is against him, “till the presumption .is repelled by contrary evidence.” At page 255 the matter is explained at large.
The principle on which the doctrine of reasonable doubt as to the fact of the.homicide is grounded, is, that in favor of life, the fact which the Stale is required to establish, must be proved beyond a reasonable doubt. It * certainly would not be in favor of life, to apply this doc *70 trine to matter of mitigation, wbicb the prisoner is required to establish. Hence, in regard to that, the rule is, the jury must be satisfied by the testimony that the matter offered in 'mitigation is true.
There is error. This must be certified, &c.